1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

TIMOTHY L. SANDERS,

     Petitioner,

vs.

DWIGHT NEVENS, et al.,

     Respondents.

Case No. 2:11-cv-02064-APG-VCF

**ORDER**

Before the court are the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (#5) and respondents' answer (#10). The court finds that relief is not warranted, and the court denies the petition.

After a jury trial with co-defendant Kevin Rodriguez, petitioner was found guilty of conspiracy to commit robbery, conspiracy to commit kidnapping, conspiracy to commit sexual assault, burglary while in possession of a deadly weapon, robbery with the use of a deadly weapon, first degree kidnapping with the use of a deadly weapon, sexual assault with the use of a deadly weapon, coercion with the use of a deadly weapon, possession of a credit or debit card without the cardholder's consent, and obtaining or using personal identifying information of another. The jury found petitioner not guilty of grand larceny of an automobile and another count of sexual assault with the use of a deadly weapon. Ex. 36 (#13). The state district court entered judgment accordingly. Ex. 42 (#13). Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 54 (#13). Petitioner then commenced this action. A post-conviction habeas corpus petition is

proceeding in the state courts, but petitioner raises in his federal petition (#5) only the grounds that he raised on direct appeal.

Congress has limited the circumstances in which a federal court can grant relief to a petitioner who is in custody pursuant to a judgment of conviction of a state court.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)."  Harrington v. Richter, 131 S. Ct. 770, 784 (2011).

> Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Richter, 131 S. Ct. at 785.  "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'"  Id. (citation omitted).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Id. (citation omitted).

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

Richter, 131 S. Ct. at 786.

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id., at 786-87.

All three grounds challenge the sufficiency of the evidence of certain crimes. Ground 1 challenges the sufficiency of the evidence on conspiracy to commit sexual assault and on sexual assault. Ground 2 challenges the sufficiency of the evidence on first-degree kidnapping. Ground 3 challenges the sufficiency of the evidence that a deadly weapon was used.

"The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 309 (1979) (citing In re Winship, 397 U.S. 358 (1970)). On federal habeas corpus review of a judgment of conviction pursuant to 28 U.S.C. § 2254, the petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 324. "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Id. at 324 n.16.

After stating the standard of review for sufficiency of the evidence, the Nevada Supreme Court summarized the facts regarding these three grounds:

> The evidence adduced at trial demonstrated that two men broke into the victim's apartment, where they bound and blindfolded her. During the incident, the men moved the victim from her living room to her bedroom, where one of the men sexually assaulted her, and then moved her again into her closet. The victim testified that the men repeatedly threatened to shoot her, and she felt like they were poking her at various times with a gun and with a knife. A knife was later found on the floor of the victim's apartment after the police arrived.

Ex. 54, at 2 (#13).

It is important to note what petitioner is not challenging. Petitioner is not challenging the sufficiency of the evidence of conspiracy to commit robbery, conspiracy to commit kidnapping, burglary, robbery, coercion with the use of a deadly weapon, possession of a credit or debit card without the cardholder's consent, and obtaining or using personal identifying information of another. Such challenges could not have succeeded. Such challenges likely would not have

1   succeeded because of the evidence against petitioner.  In addition to what the Nevada Supreme

2   Court summarized, at trial the evidence was that petitioner and Rodriguez demanded money from

3   the victim.  She did not have any money, but she told them that she had an automatic-teller-machine

4   card in her car, she told them the personal identification number for the card, and she told them

5   where her car keys were.  Upon verifying the location of the keys and car, the men left, taking the

6   victim's cell phone with them.  The ATM card was first used across the street from the victim's

7   apartment, a few minutes before the victim could free herself and call the police from a neighbor's

8   apartment.  The ATM card was used at two other locations, each further south along Las Vegas

9   Boulevard.  Videotape from the ATMs' security cameras showed that the two men were petitioner

10   and Rodriguez.  The men then boarded a bus heading northbound on Las Vegas Boulevard.

11   Videotape from the bus's security camera showed petitioner and Rodriguez sending text messages

12   on the victim's phone.  At the same time, the victim's boyfriend was receiving text messages from

13   the victim's phone, and the text messages were referring to the crimes that occurred in the

14   apartment.  A day or so after the crime, Las Vegas deputy marshals detained petitioner and

15   Rodriguez for an unrelated crime.  Petitioner dropped a phone, and the deputies allowed petitioner's

16   cousin, who was present but not under arrest, to take the phone away.  Detectives of the Las Vegas

17   Metropolitan Police Department learned of the arrest, and they knew of the significance of that

18   phone.  Searches of the residences of petitioner's cousin and petitioner's girlfriend turned up the

19   phone, as well as clothing and shoes that were similar to what petitioner and Rodriguez were

20   wearing in the security-camera videotapes.  The sole of one of the shoes matched a footprint that

21   was left behind on a rug in the victim's apartment.

22         Petitioner did himself no favors.  After petitioner was arrested, a detective interviewed

23   petitioner about the crimes.  Petitioner said that an unknown white man gave him and Rodriguez the

24   ATM card.  Ex. 33, at 112 (#12).  Petitioner and Rodriguez are black.  The victim identified her

25   attackers as black.  For petitioner's story to have been true, two unknown black men must have

26   attacked the victim and taken her ATM card.  Then they would have given the ATM card to an

27   unknown white man for unknown reasons.  The unknown white man then would have given the

28   ATM card to petitioner and Rodriguez for further unknown reasons.  Petitioner and Rodriguez then

-4-

1    would have used the ATM card at a machine right across the street from petitioner's apartment.  All

2    this would have occurred before the victim freed herself and ran to a neighbor's apartment to call

3    the police.  Also, when discussing that first use of the ATM card, petitioner started referring to the

4    victim's apartment complex by name, Eagle Trace, before the detective ever mentioned the name of

5    the complex.  Id. at 116 (#12).  Petitioner was trying to minimize his involvement, but his own

6    statement all but explicitly put him into the victim's apartment at the time of the attack.

7        On ground 1, petitioner argues that only one of two possible people committed the sexual

8    assault and that the victim could not identify the man who committed the sexual assault.  On these

9    issues, the Nevada Supreme Court held:

10       Sanders argues that the victim's testimony clearly indicated that only one man sexually
         assaulted her, but Sanders was one of two men who participated in the incident.  Thus, he
11       argues, there is not sufficient evidence to support either the sexual assault or the conspiracy
         to commit sexual assault charges.  The State argues that the jury was instructed on three
12       theories of sexual assault—direct commission, aiding and abetting, and/or conspiracy—and
         that sufficient evidence supports a conviction under an aiding and abetting theory.
13
         This court faced a similar issue regarding a sexual assault conviction in Ducksworth v.
14       State, 113 Nev. 780, 942 P.2d 157 (1997).  In that case, the evidence presented at trial
         demonstrated that the defendant knew that the victim was being sexually assaulted, but the
15       defendant repeatedly claimed that he was not the one who did the assaulting.  Id. at 792-93,
         942 P.2d at 165-66.  This court concluded that the defendant's admission that he was present
16       during the assault and some physical evidence associating him with the crime was sufficient
         evidence to support the conviction.  Id at 793, 942 P.2d at 165-66.  "Furthermore, the jury
17       was instructed on the law regarding aiding and abetting a crime and could have concluded
         that [the defendant] had aided and abetted in the commission of the sexual assault."  Id. at
18       793, 942 P.2d at 166.  This court has defined a person who "aids and abets the commission
         of a crime" as someone who "aids, promotes, encourages, or instigates, by act or advice, the
19       commission of such crime with the intention that the crime be committed."  Bolden v. State,
         121 Nev. 908, 914, 124 P.3d 191, 195 (2005), receded from on other grounds by Cortinas v.
20       State, 124 Nev. 1013, 1016, 195 P.3d 315, 317 (2008).

21       Similar to Ducksworth, sufficient evidence supports Sanders's conviction for sexual assault.
         The record demonstrates that both men moved the victim from her living room to the
22       bedroom where she was sexually assaulted, both men were present during the sexual assault,
         the man assaulting the victim said "[w]e don't care," when she begged to be left alone, and
23       there was surveillance video of both men together at the time they used the cell phone they
         stole from the victim during the incident.
24
         These same facts also provide sufficient evidence for the conspiracy to commit sexual
25       assault charge.  A conspiracy is when two or more parties make an arrangement with an
         unlawful purpose.  Nunnery v. Dist. Ct., 124 Nev. 477, 480, 186 P.3d 886, 888 (2008).
26       "[C]onspiracy is usually established by inference from the conduct of the parties."  Rowland
         v. State, 118 Nev. 31, 46, 39 P.3d 114, 123 (2002).  Even if Sanders was not the man that
27       directly committed the sexual assault, there was sufficient evidence to support his conviction
         of conspiracy to commit sexual assault because the man who did not directly sexually
28       assault the victim assisted in moving her from her living room to her bedroom and did

1    nothing to stop the assault as it was occurring.  Therefore, we conclude that a rational jury
2    could have found the essential elements of the crime beyond a reasonable doubt.

3    Ex. 54, at 3-4 (#13).  Petitioner does not argue that he was not present at the victim's apartment;

4    such an argument could not succeed given the evidence outlined above.  His argument that the

5    prosecution did not prove who directly committed the sexual assault founders upon the theory of

6    aiding and abetting, assuming that petitioner was not the actual perpetrator.[1]  The victim's own

7    testimony established that the person who did not commit the sexual assault helped the person who

8    did in moving her to from the living room to the bedroom.  Petitioner argues that the person who

9    did not commit the sexual assault was not present in the bedroom, but the victim's testimony

10   contradicts that argument.  She testified that the other man was in the bedroom most of the time,

11   leaving only after being told that her ATM card was in her car and where her car keys were, and

12   then returning after confirming her statements.  The Nevada Supreme Court's determination that

13   that was sufficient to support the conviction for sexual assault was reasonable.  28 U.S.C.

14   § 2254(d)(1).  Petitioner provides no argument why there was insufficient evidence to support a

15   conviction for conspiracy to commit sexual assault.  The Nevada Supreme Court's determination

16   that a jury could infer conspiracy from the conduct was reasonable.  Time was of the essence in a

17   burglary or robbery like this; every additional minute spent in the victim's apartment increased the

18   possibility that a passer-by would notice something was wrong and call the police.  At no point in

19   the binding, movement, and sexual assault of the victim did the person who did not commit the

20   assault voice any concern or objection.  By the lack of any objection, the jury could infer that sexual

21   assault of the victim was part of the plan.

22        In ground 2, petitioner argues that there was insufficient evidence to support the conviction

23   for first-degree kidnapping because there was no proof that the binding and movement of the victim

24

25

26   _____

27        [1]The Nevada Supreme Court did not address the theory of direct commission because the
     theory of aiding and abetting was sufficient, but the prosecution did argue that sufficient evidence
28   existed to support a theory that petitioner directly committed the sexual assault.  Ex. 51 at 10-12
     (#13).

1   from her living room to her bedroom was anything other than incidental to the robbery and sexual

2   assault.  On this issue, the Nevada Supreme Court held:

3       Sanders argues that there was insufficient evidence to support the kidnapping charge
        because the act of moving the victim was merely incidental to the crimes of sexual assault
4       and robbery.  Sanders implies that moving a victim during a robbery would always be
        incidental to the robbery because the assailant wants to avoid detection.  Finally, Sanders
5       argues generally that juries are confused by the instructions on the elements to be satisfied
        for the crime of kidnapping incident to robbery.  The State argues that because the men
6       could have sexually assaulted the victim in the living room, moving her increased her risk of
        harm.  We agree.

7
        Kidnapping occurs when
8
            [a] person . . . willfully seizes, confines, inveigles, entices, decoys, abducts,
9           conceals, kidnaps or carries away a person by any means whatsoever with the intent
            to hold or detain, or . . . holds or detains, the person for ransom, or reward, or for the
10          purpose of committing sexual assault, extortion or robbery upon or from the person,
            or for the purpose of killing the person or inflicting substantial bodily harm upon the
11          person . . . .

12      NRS 200.310(1).

13      Both parties argue the application of Mendoza v. State, 122 Nev. 267, 130 P.3d 176 (2006).
        Sanders argues that Mendoza confuses the correct application of NRS 200.310 such that, in
14      this case, Sanders has been prejudiced by its application.  Sanders asserts that Mendoza
        should be overturned.  The State contends that Mendoza clarified the application of NRS
15      200.310 and properly governs the matter.  In Mendoza, this court held that

16          to sustain convictions for both robbery and kidnapping arising from the same course
            of conduct, any movement or restraint must stand alone with independent
17          significance from the act of robbery itself, create a risk of danger to the victim
            substantially exceeding that necessarily present in the crime of robbery, or involve
18          movement, seizure or restraint substantially in excess of that necessary to its
            completion.
19
        Id. at 275, 130 P.3d at 181.  The Mendoza court suggested a jury instruction for use in
20      situations where kidnapping is charged with an associated defense, which is the instruction
        the district court gave to the jury in the instant case.  [Footnote 1:  The only difference in the
21      instruction given to the jury in this case is that it referred to sexual assault as well as robbery
        as the associated offenses.]  Id. at 275-76, 130 P.3d at 181.  The court upheld Mendoza's
22      dual convictions for robbery and kidnapping because Mendoza had seized the victim and
        pulled him inside the house before robbing him.  Id. at 270, 275, 130 P.3d at 178, 181.

23
        In Pascua v. State, 122 Nev. 1001, 1004, 145 P.3d 1031, 1032-33 (2006), the defendant
24      moved the victim from the kitchen to the bedroom while attempting to rob the victim.  This
        court upheld the defendant's dual robbery and kidnapping convictions, after applying the
25      standard in Mendoza, because "[t]he movement of [the victim] from the kitchen to his bed
        could have been determined by the jury to have had independent significance apart from the
26      underlying robbery."  Id. at 1005, 145 P.3d at 1033.  The court also noted that the jury was
        correctly instructed on dual convictions.  Id.

27
        Here, Sanders and his coconspirator broke into the victim's apartment, bound and
28      blindfolded her, robbed her, and them moved the victim from the living room to her

1

2

3

4

5

6
 bedroom, where she was sexually assaulted.  We conclude that a rational jury could have found beyond a reasonable doubt that moving the victim "create[d] a risk of danger to the victim substantially exceeding that necessarily present in the crime of robbery, or involve[d] movement, seizure or restraint substantially in excess of that necessary to [complete the associated crime]."  Mendoza, 122 Nev. at 275, 130 P.3d at 181.  Additionally, a rational jury could have also found beyond a reasonable doubt that Sanders could have committed the robbery or the sexual assault without moving the victim, and he likely could have completed the crimes without restraining her because one of the men threatened her immediately and repeatedly upon entering her apartment.  Therefore, we conclude that sufficient evidence supports Sanders's dual conviction of robbery and kidnapping.

7  Ex. 54, at 4-6 (#13).  The testimonies of the victim and investigators showed that the living room,

8  where petitioner and Rodriguez first restrained the victim, had a sliding glass door.  If the victim

9  could free herself, she might have been able to open that door to escape or to scream for help.  By

10  moving the victim into the bedroom, further away from safety, the jury reasonably could have

11  concluded that petitioner created an additional risk of danger beyond what was needed for petitioner

12  to complete either robbery or sexual assault.  The Nevada Supreme Court's decision was a

13  reasonable application of Jackson v. Virginia.  28 U.S.C. § 2254(d)(1).

14   In ground 3, petitioner argues that the deadly-weapon enhancements or aggravations to his

15  sentences should be reversed because there was no proof at trial that either defendant was in

16  possession of a deadly weapon.  On this issue, the Nevada Supreme Court held:

17

18

19

20

21

22
 Sanders argues that because the victim never actually saw a gun or a knife, there was not sufficient evidence to support the jury's conclusion that a deadly weapon was used during the commission of the charged crimes.  The State argues that there was sufficient evidence in the form of the victim's testimony that the object she felt on floor in her living room felt like a gun, and that one of the men kept telling her that he was going to shoot her.  In addition, the State argues that the deadly weapon enhancements could also be based on a knife that was found on the floor of the victim's apartment after the incident.  The jury "'determine[s] what weight and credibility to give to various testimony.'"  Buchanan v. State, 119 Nev. 201, 217, 69 P.3d 694, 705 (2003) (quoting Hutchins v. State, 110 Nev. 103, 107, 867 P.2d 1136, 1139 (1994)).

23

24

25

26

27
 The victim testified at trial that she awoke to what felt like a .9 millimeter gun in her back; [footnote 2: The victim became familiar with weapons through her job with the military.] she was repeatedly told by the two men that they would shoot her; she felt a knife poking her in her ribs; while lying on her living room floor, she felt an object next to her that she believed was shaped like a gun; and there was a knife on the floor after the incident that was not on the floor before the incident.  Although this evidence is mostly circumstantial, "[c]ircumstantial evidence alone can certainly sustain a criminal conviction."  Buchanan, 119 Nev. at 217, 69 P.3d at 705.  Further, it is for the jury to decide the weight of the evidence of the credibility of the witnesses.  See id.

28
 Based on the evidence in the record, and viewing that evidence in the light most favorable to the prosecution, we conclude that there is sufficient evidence from which a rational jury

1   could find Sanders guilty beyond a reasonable doubt of using a deadly weapon during the
2   commission of the charged crimes.

3   Ex. 54, at 6-7 (#13). The counts charging petitioner with the use of a deadly weapon allowed for

4   the possibility of a firearm, a knife, or both. See Ex. 8 (#11). Setting aside for the moment the

5   firearm, the Nevada Supreme Court's ruling on the use of a knife was reasonable. The victim

6   testified that she felt a knife poking her, and one of her knives was found on the floor of the

7   apartment while the rest were in a rack. That certainly was sufficient evidence for the jury to find

8   infer petitioner or Rodriguez took a knife from the rack and poked the victim with it while in the

9   commission of the other crimes. Regarding the firearm, the question is closer, but this court's

10  question is whether the Nevada Supreme Court's decision was reasonable, not whether it was

11  correct. In addition to what the Nevada Supreme Court stated above—the victim feeling what felt

12  like a gun and petitioner and Rodriguez telling her that they would shoot her if she did not

13  cooperate—a nurse examined the victim. The nurse found bruising on the victim's neck, where the

14  victim had told the nurse that a gun had been placed. Ex. 32, at 48, 50-51 (#12). Even if the

15  victim's specificity about a weapon she did not see was misplaced, the Nevada Supreme Court

16  reasonably could have concluded that sufficient evidence of a firearm existed based upon the

17  victim's testimony of what she felt and heard and the nurse's testimony of the victim's consistent

18  injuries.

19       To appeal the denial of a petition for a writ of habeas corpus, Petitioner must obtain a

20  certificate of appealability, after making a "substantial showing of the denial of a constitutional

21  right." 28 U.S.C. §2253(c).

22       Where a district court has rejected the constitutional claims on the merits, the showing
         required to satisfy §2253(c) is straightforward: The petitioner must demonstrate that
23       reasonable jurists would find the district court's assessment of the constitutional claims
         debatable or wrong.
24

25  Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also James v. Giles, 221 F.3d 1074, 1077-79 (9th

26  Cir. 2000). Of the three grounds, the only issue that would be debatable is this court's

27  determination that the Nevada Supreme Court's decision on the use of a firearm was reasonable.

28  However, the determination regarding the use of a knife is not debatable, and the prosecution was

1   required to prove the use of either a knife or a firearm, not both, and that makes the question on the

2   use of a firearm moot.  No jurists would find debatable the determinations on sexual assault,

3   conspiracy to commit sexual assault, and kidnapping.  The evidence strongly indicated that these

4   crimes occurred, and the evidence of petitioner's presence was so strong that he does not contest his

5   presence at the victim's apartment.  The court will not issue a certificate of appealability.

6          IT IS THEREFORE ORDERED that the petition for a writ of habeas corpus (#5) is

7   **DENIED**.  The clerk of the court shall enter judgment accordingly.

8          IT IS FURTHER ORDERED that a certificate of appealability is **DENIED**.

9          Dated:  January 26, 2015.

10

11                                                   _____

12                                                   ANDREW P. GORDON
                                                     United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28